# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**CHARLESTON EUGEN SIBLEY**                                  **PLAINTIFF**

**VERSUS**                                   **CIVIL ACTION NO.: 1:08cv464-HSO-JMR**

**MIKE BYRD, et al**                                               **DEFENDANTS**
_____

## REPORT & RECOMMENDATION:

This matter is before the Court on the Defendants' Motion [28-1] for Summary Judgment which is accompanied by a Memorandum in Support [29-1] thereof. To date, Plaintiff has not filed a Response in Opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that the Defendants' Motion for Summary Judgment should be granted. Accordingly, Plaintiff's Complaint in the above-captioned action should be dismissed.

## STATEMENT OF THE CASE:

Charleston Sibley ("Plaintiff") filed this *pro se* Section 1983 action against Defendants and alleged that he suffered a violation of his constitutional rights while being detained as a pretrial detainee at the Jackson County Adult Detention Center ("JCADC"). Specifically, Plaintiff alleges that he was denied adequate medical care for injuries he received when a collapsing bunk bed allegedly struck him.

## FACTS:

On or about July 25, 2008, Plaintiff was housed in Cell # 2 of Zone B-E at the JCADC. Plaintiff's bed was located directly beneath the upper bunk, which was secured by metal triangles welded to both the bed frame and the wall. The upper bunk was approximately thirty (30) inches

above the bottom bunk. All available evidence indicates that one of the metal triangles which secured the upper bunk to the wall detached and allowed the upper bunk to collapse on one end, so that it was left hanging approximately twelve (12) inches above Plaintiff's bed. *See* Exhibits "3" & "4" attached to Motion [28-2].

Deputy Tim Davis ("Davis") heard a loud noise come from Cell # 2, and went to investigate its source. Upon reaching the cell, Davis observed Plaintiff lying face down on the bottom bunk with the top bunk partially suspended over him. Plaintiff was breathing, but did not respond to Davis' attempts to communicate with him. However, Davis did not notice any obvious injuries to Plaintiff. Davis called for assistance, and was joined by Nurse Jarome Barnes ("Barnes"), Deputy Robert Zwick, Captain Ray Bates, and Director Ken Broadus. *See* Exhibit "4" attached to Motion [28-2].

Barnes entered Plaintiff's cell to conduct a physical examination, and noted that while Plaintiff was non responsive, he had a pulse of eighty (80). Further, Barnes did not observe any evidence of physical injury to the Plaintiff. Barnes removed Plaintiff from the bottom bunk, and noticed that Plaintiff used his muscles to assist in the movement. Barnes then raised Plaintiff's right arm above his face and dropped it. Barnes noted that the arm veered to the right rather than make contact with Plaintiff's face. Barnes determined that Plaintiff was conscious, and instructed him to stand and come into the light for evaluation. Barnes' examination revealed no evidence of trauma, edema, blood, or scrapes on the Plaintiff. Further, Plaintiff's pupils were equal and reactive to light, and he moved all extremities well. *See* Exhibits "5" & "6" attached to Motion [28-2]. Plaintiff made no complaints of an injury to his back. *See* Exhibit "6" attached to Motion [28-2].

On August 20, 2008, twenty-six days after the incident involving the bunk bed, Plaintiff sent in a request for sick call and claimed that his back was in pain as a result of the upper bunk falling

on him. A nurse recommended that Plaintiff purchase ibuprofen from the canteen. *See* Exhibit "7" attached to Motion [28-2]. Plaintiff filed another sick call request on August 24, 2008, and stated that he needed help with his back, as the pain prevented him from sleeping or moving around. *Id.* On August 27, 2008, Plaintiff was examined in the clinic by Barnes and given four packs of ibuprofen. *See* Exhibit "5" attached to Motion [28-2]. The following day, Plaintiff filed a third sick call request asking for a stronger pain medication for his back, but was advised by Barnes to purchase ibuprofen from the canteen. *See* Exhibits "6" & "7" attached to Motion [28-2].

## **STANDARD OF REVIEW**:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light

most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

## **APPLICABLE LAW:**

In their Motion for Summary Judgment [28-1], Defendants contend that Plaintiff's official capacity claims against them are, in reality, claims against Jackson County. Thus, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983. Additionally, in their Motion for Summary Judgment [28-1], Defendants argue that Plaintiff's individual capacity claims must fail because he has failed to establish that a violation of his rights occurred, or that Defendants' conduct was objectively unreasonable at any time.

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy

for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality

was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

Plaintiff claims that Defendants are liable under section 1983 by and through their employment with the JCADC. However, the Court notes that Plaintiff's official capacity claims against the defendants are, in reality, claims against Jackson County. Therefore, to the extent Plaintiff brings this action against Defendants in their official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: first, that Jackson County had an official policy, practice or custom which would subject it to section 1983 liability; second, that the official policy is linked to the constitutional violation(s); and third, that the official policy reflects Jackson County's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff alleges that Defendants are liable in their official capacities for exhibiting deliberate

indifference to his serious medical needs while he was incarcerated as a pretrial detainee at the JCADC. Specifically, Plaintiff contends that Defendants did not provide him adequate treatment for the alleged injuries he received as a result of his bunk collapsing on top of him. However, other than the above mentioned allegations of inadequate medical care, Plaintiff presents no evidence that an official policy of Jackson County existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claims against Defendants.

Plaintiff's complaint additionally asserts claims against the Defendants in their individual capacities. In response, Defendants plead the affirmative defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).

In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999). The standard is the same for a pretrial detainee alleging an episodic act or omission. *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993);

*Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). Disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Further, the law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). If a dispute exists as to whether appropriate medical treatment was given, exceptional circumstances must exist for the claim to be actionable pursuant to section 1983. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Additionally, medical records or medication, diagnosis, and sick calls may rebut an inmate's allegation of deliberate indifference. *Id.*

After reviewing the evidence of record in a light most favorable to the non-movant, the Court finds that Plaintiff has failed to create a genuine issue as to whether he suffered a violation of his constitutional rights. Plaintiff's primary allegations are that Defendants did not treat his injuries with the appropriate diagnostic techniques and equipment, that Defendants should have referred him to a hospital for a followup, and that Defendants ignored his requests for pain medication. However, the available evidence clearly reflects that the conduct of the Defendants did not rise to the standard of deliberate indifference to Plaintiff's medical needs.

As previously noted, Plaintiff was thoroughly examined by Nurse Barnes following his alleged injury from the falling bunk. The evidence reflects that Barnes checked Plaintiff for signs of physical injury, checked his pulse rate, and examined his pupils and limb movement to rule out a head injury. Furthermore, Defendants are adamant that Plaintiff showed no signs of any physical injury such as bleeding, swelling, or scratches on his body. Plaintiff has presented no evidence to counter the statements made by both Deputy Davis and Nurse Barnes.

Based upon the available evidence, the Court must conclude that Defendants' conduct did

not rise to the level of deliberate indifference. Plaintiff clearly disagreed with the treatment which he was provided. However, a mere disagreement with treatment, absent something more, is insufficient to state a claim pursuant to Section 1983. *See Norton*, 122 F.3d at 292. Further, Defendants failure to refer Plaintiff to a hospital does not rise to the level of deliberate indifference. Plaintiff's complaints at best constitute a disagreement with the treatment received and, at worst, sound in medical malpractice. Regardless, neither allegation is sufficient to state a constitutional claim under section 1983. *Id.; see Vanardo*, 920 F.2d at 321.

Plaintiff further alleges that Defendants ignored his sick call requests for pain medication. However, the Court again finds that the evidence of record fails to create a genuine issue as to whether Defendants were deliberately indifferent to Plaintiff's medical needs. Plaintiff's first request for pain medication came on August 20, 2008. This request corresponds with the very same day in which Plaintiff filed his complaint in the current action. *See* Complaint [1-1]. Furthermore, all three sick call requests were answered in a timely fashion by the medical personnel at the JCADC. The record reflects that Plaintiff was even brought in to the clinic for an examination. The mere fact that Defendants did not resolve Plaintiff's requests in a favorable manner does constitute deliberate indifference. The Court finds that this issue is without merit.

**CONCLUSION**:

Based on the forgoing analysis, this Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 claim. Therefore, this Court finds the Defendants' Motion [28-1] for Summary Judgment should be granted, and that all claims against the Defendants should be dismissed with prejudice, both in their individual and official capacities.

In accordance with the Rules of this Court, any party, within ten days after being served a

copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the ___27th___ day of May, 2009.

                                                              s/ John M. Roper
                                      CHIEF UNITED STATES MAGISTRATE JUDGE